# Exhibit A

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| MIDDLESEX, ss. | Superior Court Department<br>Of the Trial Court<br>Civil Action No. |
| DOUGLAS C. SCHOENBERGER, P.C.<br>DBA COOPERSBURG FAMILY PRACTICE | **RECEIVED**<br>JP<br>2/26/2021 |
| Plaintiff, | |
| v. | |
| CYNOSURE, LLC | |
| Defendant. | |

## COMPLAINT

## PARTIES

1. The Plaintiff, Douglas C. Schoenberger, P.C. d/b/a Coopersburg Family Practice (**"CFP"**), is a Pennsylvania professional corporation with a principal place of business located at 101 S. Main Street, Suite 101, Coopersburg, Pennsylvania 18036.

2. The Defendant, Cynosure, LLC ("**Cynosure**), is a Massachusetts limited liability company with a principal place of business located at 5 Carlisle Rd, Westford, MA 01886.

## JURISDICTION

3. This case arises under a professional equipment lease which provides that courts located in Massachusetts have exclusive jurisdiction and that Massachusetts law applies. The amount in controversy exceeds $50,000.00.

1

4. Venue in this Court is proper because the defendant, Cynosure, has a place of business in Middlesex County.

**STATEMENT OF FACTS**

5. CFP is a family-owned urgent care, family medicine, and occupational medicine practice located in Coopersburg, Pennsylvania.

6. CFP has been in operation since 1990, providing a wide range of services, including preventive care, chronic disease management, alternative therapy, as well as Botox®, Latisse® eyelash booster treatments, and brain function testing.

7. In or about January 2020, CFP wanting to enhance and expand its cellulite reduction and skin-tightening therapies searched for appropriate medical equipment to support such services.

8. On or about October 10, 2019, Douglas C. Schoenberger ("**Dr. Schoenberger**"), the principal of CFP together with Alicia Schoenberger ("**Alicia**") met with Bryan Biglin ("**Biglin**") of Cynosure to review the purchase of a TempSure machine (the "**Machine**").

**Cynosure made Multiple Verbal and Written Representations to CFP About the Efficacy and Profitability of the Machine and the Superior Quality of Cynosure's Support.**

9. By email dated October 2, 2019, Biglin wrote to Dr. Schoenberger and Alicia as follows (alterations in original):

> Dr Schoenberger and Alicia,
>
> Thank you again for taking the time to meet with me today, it was a pleasure to see you again. As we discussed, I wanted to send a follow up email to recap our meeting, provide some more information on the device itself, and list out the information gathering steps we put together this afternoon.
>
> Cynosure will insulate your practice with three layers of support that has never been seen before in this industry:

1. Dedicated Account Manager – former Aesthetician or Plastic Surgeon's office manager who's paycheck is tied directly to your success. Pay off the device in less than 12 months, she gets a bonus. If you re-invest with the company in less than 12 months, she gets a bonus. She will also help train your staff, run your open houses once a quarter, she has literal skin in the game to ensure your success.

2. Amplified Marketing Portal w/ dedicated Digital Marketing Specialist – Covering every piece of marketing for your waiting room so that your patients are literally asking for these treatments by name, before they hit your exam room. Create custom logo's, brochures, pamphlets, banners, DVD loops, digital picture frames, etc.

3. Web Package – A five figure web package is included with the purchase of device. A custom website with mobile access and online scheduling, search engine optimization (1st and top page of Google), social media (Facebook/Instagram), and brand reputation.

We are completely outsourcing almost every aspect of marketing in each partnership site and transforming the profitability of their practice forever. We have created your business profile which will now allow my manager to literally go down to the penny and break down your ROI during our follow up meeting on **October 11th over breakfast**. Prior to that meeting on the **11th**, please see below for the information gathering steps we put in place:

**October 4th at 10:15am** – Webinar with Max – Introduced via group text message

**October 8th – 5pm -  (Will text to confirm as well)** – Director of Customer Success, Mike Russo. Understand your ROI with current patient volume. Mike oversees all of our post sale support and marketing and is responsible for helping implement this technology into our practices. He has been in the industry for over 15 years and is a wealth of knowledge. Please ask any questions you have!

**October 9th – 5pm - (Will text to confirm as well) -** Reference Call with Physician (will introduce via group text message) – real time feedback from a peer and ask any questions you have.

About the device itself, please see attached FDA clearances and video links about the procedure. I would also direct you to https://www.realself.com/tempsure-envi to see what patients have been saying about this procedure!

What makes TempSure™ incredible?

-Expandable Platform - Envi, Vitalia, Surgical, now **FIRM**!!
-Real - time temperature sensing technology

3

-Therapeutic Logic Control = Timed treatments at target tissue temperature
- 300 Watts of Power

**Link to TempSure Press Release** [prnewswire.com]

Unlike other Radio Frequency devices, TempSure has the distinct advantage of Therapeutic Logic Control (TLC)- a system that links treatment time with target temperature, allowing for consistent treatment temperatures and high patient comfort levels (additional details below).

The link below is from the TV show the Plastics. One of the Real Housewives of New York is getting the treatment done. It is over 4 minutes and will really show you how the treatment works and some great results on the neck!!

https://www.youtube.com/watch?v=7BBdJjuejUc&t=14s [youtube.com]

Lisa Gastineau reality TV star and jewelry designer getting her first treatment with TempSure !!! Being called the "20-minute Facelift" your patients will be lining up to get this done!

https://youtu.be/tbdRSfB6Z-k [youtu.be]

Here is a clip of it on Fox News NY.

https://www.instagram.com/p/Bq0nV66DpPi/?utm_source=ig_share_sheet&igshid=kwhby02lf1ln [instagram.com]

Any other questions please let me know!  Have a great weekend and I look forward to coming back on the 11th!

Best Regards,

Bryan Biglin

10. In connection with Cynosure's sales presentation to CFP, Biglin, on behalf of Cynosure, made the following representations to CFP:

   a. That the Machine would be paid off within 6 months to 1 year of the purchase date as a result of Cynosure's highly successful marketing plan.

   b. That Cynosure would provide CFP with a dedicated sales representative who would be performing 90% of the work for advertising and promoting the Machine in connection with which, Cynosure would set up CFP with a minimum of 2 customers per week which would cover the cost of the equipment.

4

    c.   That the dedicated sales representative would earn bonuses directly related to CFP's sales success.

    d.   That the dedicated sales representative would hold open houses, handle the advertising and help CFP set up its waiting room and patient rooms in a way that was geared toward the success of the Machine.

    e.   That Cynosure would connect CFP with the advertising company known as "Patient Pop," in connection with which, CFP would be number one on Google's search for the Machine in CFP's area.

**<u>The Cynosure Purchase Agreement Obligates Cynosure to Provide Parts, Customer Service, and Allied Support</u>**

11. Thereafter, on or about February 24, 2020, CFP and Cynosure executed a purchase agreement for the Tempsure Machine for a purchase price of $130,750 ($138,595 after tax).

12. Additionally, the Cynosure Customer Purchase Agreement Terms and Conditions of Service provides, in pertinent part:

The Customer shall receive the following services:

    a.   Unlimited telephone and email support from Cynosure's Technical Service team…

    b.   …Cynosure will use commercially reasonable efforts to provide a response to Customer Inquiry within 48 Coverage Hours…

    c.   Labor, travel, shipment and covered parts…

    d.   Cynosure shall repair through field service, replace or provide a loaner for the Equipment in Cynosure's sole discretion, should the Equipment become inoperative through normal and proper use and operation…

13. The Cynosure Customer Purchase Agreement product description section provides, that, included with the Machine are, among other things:

- Treatment Handpieces (10mm, 15mm, 20mm) 25 hr life each handpiece
- Footswitch and power cord

**CFP Financed the Purchase of the Machine at an Increased Cost.**

14. CFP financed the purchase of the Machine through Cynosure's recommended finance company, Balboa Capital Corporation of Costa Mesa, California ("**Balboa**") .

15. Thus, on or about February 24, 2020, CFP executed an Equipment Finance Agreement with Balboa (the "**Balboa Finance Agreement**").

16. The Balboa Finance Agreement provides that first 6 installment payments are in the amount of $99.00, each. The remaining installment payments are in the amount of $3,235.04. The total of all installment payments under the Balboa Finance Agreement is $194,102, including simple interest at 6%.

17. Under the terms of the Balboa Finance Agreement, CFP was required to pay an advance payment of $349.00, including a $25 documentation fee.

18. Pursuant to Balboa Finance Agreement, Balboa has a security interest in the Machine, giving Balboa the contractual right to record a UCC-1 financing statement.

19. Dr Schoenberg, individually, was required to guaranty payment under the Balboa Finance Agreement.

**When Cynosure Installed the Machine at CFP, it was Missing Critical Parts.**

20. On or about March 2, 2021, a day before the scheduled installation, Cynosure installed the Machine at the CFP premises in Coopersburg, Pennsylvania.

21. However, on the date that Cynosure installed the Machine, the foot switch was not working.

22. On the same date, CFP called Jennifer Kramer ("**Krammer**"), representative of Cynosure to inform Cynosure about the defective foot switch.

23. During the call, Krammer represented to CFP that she would bring two foot switches—one for the demonstration and other to replace CFP's defective foot switch.

24. On the day of the training, March 4, 2020, Krammer only brought one foot switch, which she used for demonstration purposes, and she did not leave that critical part (or another replacement) with CFP.

25. CFP promptly called Lauren Berest ("**Berest**"), sales representative of Cynosure, informing her of the foot switch issue as well as the missing 60mm handpiece, described below.

26. The section of the Machine manual describing the foot switch provides, in part:

> A single pedal or double pedal footswitch can be used to activate RF for a connected handpiece. The generator includes two foot switch ports and both ports support single and double-pedal foot switches. The single pedal footswitch is used to activate the RF for the monopolar ENVI handpieces and the bipolar forceps. It also activates the coagulation mode for those TempSure devices that do not have the surgical upgrade. The dual-pedal footswitch can be used to activate RF for Smart handpieces, COAG and bipolar.

27. Without the foot switch, the Machine was lacking up to 30-40% of its functionality. For example, the cellulite treatment, one of the Machine's major advertised features, does not work without the footswitch.

28. Additionally, when Cynosure installed the Machine, a 60mm handpiece (used to treat cellulite) was also missing.

29. CFP followed-up with Cynosure multiple times between March 3, 2020 through September 2020, by telephone or virtual meetings, to receive the foot switch.

30. Cynosure did not deliver missing footswitch until September 22, 2020, some 6 months after the installation of the Machine.

31. Because CFP is a medical practice, its personnel cannot, by law, use the Machine until they have been trained and certified by Cynosure.

**Cynosure Promised a "Dedicated Account Manager; None of the *4* Account Managers Actually Assigned to the Account in Succession Were "Dedicated" or <u>Knowledgeable.</u>**

32. As set forth in paragraph 9, above, one of Cynosure's promises to CFP was that a dedicated account manager would train CFP's staff on the use of the Machine.

33. However, during the span of less than a year from the date of purchase of the Machine, Cynosure assigned 4 different account managers in succession to the CFP account, as a

34. The four account managers that Cynosure assigned to service the CFP account were: Brian Biglin, Jayme Hudson, Allie Bracken, and Lena Kabak.

35. Of the four account managers identified above, only Lena Kabak actually visited the CFP premises, and did so for the first time on January 18, 2021, 11 months after the CFP purchased the Machine.

36. Thus, each successive manager needed to be educated about CFP's situation, and none were sufficiently knowledgeable about it to render effective assistance.

37. On March 4, 2020, two days after date of the installation of the Machine, Cynosure representative Jennifer Kramer performed an initial training on the Machine with CFP's staff. This training session was the only time that CFP actually used the Machine.

38. Cynosure did not provide training certificates to CFP until August 19, 2020, 5 ½ months after the date of Machine installation.

8

39. Without training certificates, CFP could not legally or ethically use the Machine on patients.

**Cynosure's Promised Marketing Services Were Ineffective and Incompatible with CFP's Model.**

40. CFP's prime incentive for purchasing the Machine from Cynosure was Cynosure's heavily-promoted marketing and advertising plan, and Cynosure's promises of guaranteed success.

41. As of the date of the within Verified Complaint, Cynosure representatives have not participated in any of CFP's advertising meetings. Nor have Cynosure representatives assisted in the launch of CFP's website, which was to feature the Machine and the services to be made available because of it.

42. As part of Cynosure's promised marketing plan to CFP, Cynosure promised marketing support through its in-house company known as PatientPop, Inc. ("**PatientPop**").

43. The PatientPop website -- PatientPop » The Proven Practice Growth Platform – makes the following representations, among others:

> **Grow your practice With PatientPop**
>
> With a focus on continuous innovation, PatientPop offers the first all-in-one practice growth platform that's HIPAA-compliant, delivers measurable improvements, and proven to grow your practice.
>
> **Attract more patients**
>
> We'll help you establish a prominent web presence to improve your search result rankings, and reach more patients across web and social. Stand out with a high-performing website, engaging social media posts, blog content and more.
>
> **Manage your reputation**

9

> Skyrocket your online reputation with provider-specific solutions. Establish a continuous feedback loop with automated patient satisfaction surveys that increase your positive testimonials and help improve the quality of your patient interactions
>
> **Modernize your patient experience**
>
> Convert web searches into patients with easy-to-use online booking, that's intuitive and mobile responsive. New and current patients can schedule an appointment wherever and whenever they find you online.
>
> **Enhance with EMR integration**
>
> We integrate with the most widely used practice management and EMR & EHR systems like athenahealth, Greenway, and Dentrix, so your office and patients benefit from a streamlined experience.

44. On February 27, 2020, CFP signed a service contract, for two years of advertising, with PatientPop, Cynosure's in-house company.

45. CFP's onboarding meeting with PatientPop was not scheduled until till August 2020

46. Moreover, after executing the PatientPop contract, CFP discovered that PatientPop does not work with NXGN Management, LLC ("**NextGen**") -- CFP's Electronic Health Record ("**EHR**") provider.

47. Accordingly, the PatientPop services are of little to no value to CFP.

**Cynosure Rebuffed or Ignored CFP's Multiple Requests to Provide the Promised Services, or, in the Alternative, to Take Back the Machine**

48. Multiple times between March 2020 and January 2021, CFP, mostly though its practice manager, Alicia Schoenberger, made multiple requests to Cynosure to correct the problems with the Machine's parts, customer support, and marketing services that Cynosure had promised.

49. Cynosure was largely unresponsive to the above-referenced requests.

10

50. Because of the multiple problems with the Machine and the associated promised services as detailed herein, CFP did not use the Machine so that it would be in a condition suitable for return to Cynosure.

51. By email dated May 4, 2020, CFP requested that Cynosure take back the Machine and refund CFP's costs.

52. Berest, Cynosure's former employee and sales representative, refused to honor CFP's request for returning the Machine and directed CFP to communicate with the Balboa regarding inquiries about payments or other options for relief.

53. Upon information and belief, as of the date of the within Verified Complaint, Berest, representative of Cynosure who sold the Machine to CFP, is no longer employed by Cynosure.

54. By letter dated January 22, 2021, CFP, through counsel, made demand on Cynosure to rescind the Cynosure purchase contract, refund the Installment payments made by CFP to date, and to pay the balance owed to Balboa directly to Balboa.

55. By letter dated February 9, 2021, Cynosure through counsel, responded to the January 22, 2021 demand letter denying liability, and asserting, among other things, that it had fully performed under the contract between Cynosure and CFP.

## CAUSES OF ACTION

## COUNT I

**Breach of Contract against Cynosure**

56. The Plaintiff, CFP, restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

57. The Cynosure Purchase Agreement obligated Cynosure to provide a complete, fully functioning Machine.

58. The Cynosure Purchase Agreement also obligated Cynosure to provide dedicated customer support, training, and marketing support.

59. Cynosure breached the contract by failing to timely provide a fully functioning Machine, failing to provide a dedicated account manager, failing to provide effective training and training certificates, and failing to provide actual marketing support.

60. As a direct and proximate result thereof, CFP has been deprived of the benefits of its bargain, its investment opportunity, and other opportunities, and otherwise has been damaged.

## COUNT II

### Breach of the Covenant of Good Faith and Fair Dealing against Cynosure

61. CFP, restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

62. The contract between CFP and Cynosure incorporates a covenant of good faith and fair dealing implied by law.

63. Cynosure breached the covenant of good faith and fair dealing by, among other things, failing to timely provide a fully functioning Machine, failing to provide a dedicated account manager, failing to provide effective training and training certificates, and failing to provide actual marketing support. and, through its members or their agents, making material misrepresentations to CFP.

64. Cynosure also breached the covenant of good faith and fair dealing by failing, repeatedly, to respond or to respond timely to CFP's multiple queries and complaints.

65. As a result thereof, CFP has been damaged in an amount to be determined at trial.

## Count III

### Misrepresentation

66. CFP restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

67. The Defendants, either directly, or through their agents, made certain promises and representations to CFP and its principals, including, those set forth in paragraphs 9-10 above.

68. CFP reasonably relied on Cynosure's misrepresentations.

69. As a result of the foregoing, CFP has been damaged in an amount to be determined at trial.

## Count IV

### Violation of M.G.L. ch. 93A, sec. 11 against all Defendants

70. CFP restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

71. CFP and the Cynosure are each engaged in trade or commerce.

72. Cynosure's acts, omissions, and representations as described herein, including but not limited to the making of material misrepresentations of fact to CFP, failing to timely deliver the Machine with all of the critical parts, failing to provide a dedicated account manager, failing to provide timely and adequate training, failing to provide adequate marketing support, and failing, despite demand, to take back the Machine and refund CFP's money paid for the purchase of the Machine constitute unfair and/or deceptive acts and practices declared unlawful by the Massachusetts attorney general.

73. The unfair and deceptive business acts or practices identified herein occurred primarily and substantially in the Commonwealth of Massachusetts.

74. CFP has suffered a loss of money and property as a result of the defendants' violation of M.G.L. ch. 93A, sec. 11.

## PRAYERS FOR RELIEF

**WHEREFORE**, the Plaintiff, Douglas C. Schoenberger, P.C. d/b/a Coopersburg Family Practice, moves this Honorable Court to enter the following relief:

1. Enter judgment for CFP and against Cynosure in an amount determined by this Court;

2. Pursuant to Count IV, treble the amount of any monetary award and order the defendants to reimburse CFP for all of its reasonable attorneys' fees and costs incurred in the action;

3. Award CFP statutory interest to run from the date of the breach of contract;

4. Enter such other further relief as is equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

                                      DOUGLAS C. SCHOENBERGER, P.C.
                                      DBA COOPERSBURG FAMILY PRACTICE

                                      By its Attorneys,

                                      */s/ Seth H. Salinger*
                                      Seth H. Salinger (BBO No. 555426)
                                      Stuti Venkat (BBO No. pending)
                                      53 Langley Road, Suite 270
                                      Newton, MA  02459
                                      (617) 244-7630 (phone)
                                      (877) 222-3572 (fax)
                                      sethsal@gmail.com
                                      stutivenkat53@gmail.com

Dated: February 26, 2021